IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:22-CV-277-BO-KS

| | |
|---|---|
| LYNN BERNSTEIN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| GARY SIMS, individually and in his official | ) |
| capacity as Director of Elections for the Wake | ) |
| County Board of Elections; and WAKE COUNTY | ) |
| BOARD OF ELECTIONS | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' MEMORANDUM
## IN SUPPORT OF MOTION TO DISMISS

NOW COME the defendants, GARY SIMS, individually and in his official

capacity as Director of Elections for the Wake County Board of Elections, and WAKE

COUNTY BOARD OF ELECTIONS by and through counsel, and pursuant to Local Rule

7.1 and 7.2, hereby submit this Memorandum of Law in Support of their Motion to Dismiss

filed contemporaneously with this memorandum.  In support of the Motion to Dismiss, the

undersigned shows unto the Court that the plaintiff's complaint fails to allege facts

sufficient to state a claim against named defendants for the following reasons.

## STANDARD OF LEGAL REVIEW

Rule 12(b) authorizes dismissal based on a dispositive issue of law. *Neitzke v.*

*Williams*, 490 U.S. 319 (1989).  A Rule 12(b)(6) motion challenges the legal sufficiency

of a plaintiff's complaint. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir.2009).

When ruling on the motion, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 93–94 (2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007)). Although complete and detailed factual allegations are not required, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions." *Twombly,* 550 U.S. at 555 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 555). Similarly, a court need not accept as true a plaintiff's "unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts. v. J.D. Assocs. Ltd.,* 213 F.3d 175, 180 (4th Cir. 2000). A trial court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 555.

## SUMMARY OF NATURE OF THE CASE

This case is about a plaintiff, accompanied by another person, coming on to the Board of Elections' warehouse property after hours on a Saturday three (3) days before an election (one of the busiest days of the year for the defendants) and interfering with a gate which was closing and who, as a result, were both trespassed from the Wake County Board of Elections' warehouse facility only. On page 18, ¶ 51 of the Complaint plaintiff admits this. Out of this singular trespass notice, plaintiff makes the incredible, unfounded and totally implausible assertion that she is ". . .now prevented, on threat of criminal prosecution for trespass charges, from ever stepping foot on Wake County Board of Elections [sic] property for any purpose whatsoever, whether it be to speak, protest, or even cast a vote as a citizen of Wake County." (Compl. p 32, ¶ 110).

Through this action, plaintiff's complaint seeks injunctive relief, declaratory judgment and compensatory damages arising out of her May 14, 2022 trespass notice for defendant Wake County Board of Elections' [hereinafter "WCBOE"] warehouse located at 1200 N New Hope Road, Raleigh, NC. Plaintiff's claims include Count I styled "Violation of the First Amendment" pursuant to 42 U.S.C. § 1983; Count II styled "Violation of the Equal Protection Clause of the Fourteenth Amendment" pursuant to 42 U.S.C. § 1983; Count III styled "Violation of the Due Process Clause of the Fourteenth Amendment" pursuant to 42 U.S.C. § 1983; Count IV styled "Retaliation for Exercising Rights Guaranteed by the First Amendment" pursuant to 42 U.S.C. § 1983; Count V styled "Violations of the North Carolina Constitution"; Count VI styled "Common Law Assault"; Count VII, plaintiff's state law claim styled "Common Law Defamation" and Count VIII styled "Declaratory Judgment Relief."

## STATEMENT OF THE FACTS

As this is a motion under Fed.R.Civ.P. 12(b)(6), a liberal recitation of the factual allegations from plaintiff's complaint are in order and will occur throughout the argument. Plaintiff alleges that she is "longtime advocate for elections that are transparent, trackable, robustly audited, and publicly verified." (Compl. p 9, ¶ 30). Plaintiff further alleges that she has "championed" efforts and advocacy for election transparency and that she is "not compensated for her work; instead, her election integrity work is done on a voluntary basis and motivated by her civic-mindedness." (Compl. p 10, ¶ 35). Plaintiff alleges that "because her work demands that elections officials discharge their duties in a transparent and accountable manner, as required by State law, however, she has drawn the ire of some

3

officials. This is especially true in the case of Defendant Gary Sims, Director of the Wake County Board of Elections." (Compl. p 10, ¶ 36).

Plaintiff alleges that she promotes a litany of "election integrity efforts" which she says causes consternation to the defendants. (Compl. pp 14-15, ¶ 43). Plaintiff alleges that defendants are trying to prevent the public from observing vote counts, and as a result she decided she would engage in a "small, peaceful protest on May 17, 2022 at 7:30 pm" to bring attention to the defendants' lack of transparency. (Compl. p 16, ¶ 46). In order to determine where this "protest could be safely and legally undertaking, she drove to the Wake County Board of Elections Operations Center on the afternoon of [Saturday] May 14, 2022" accompanied by a fellow election integrity advocate John Brakey (hereinafter "Brakey"). (*Id*.) Upon arrival she saw a yellow sign that read "Board of Elections Event" that she assumed was not a leftover sign from early voting but indicated an active WCBOE event which she assumed would be open to the public. (Compl. p 17, ¶ 47). Though she assumed that this was an open event, she took pains to park "offsite in a parking lot not belonging to the Board of Elections after originally trying to park across the street from the Board's property." (Compl. p 17, ¶ 48).

Plaintiff admits that at 4:51 PM she and Brakey walked up the driveway toward the Board of Elections event and that Brakey entered 4 or 5 steps inside an open gate. (Compl. p 18, ¶ 51). The gate began to close, and Brakey attempted to exit the gate which tripped the gate safety sensor and the gate retracted. Plaintiff alleges that even though the gate began to close and retract after Brakey exited the gate, he and the plaintiff were still in the vicinity of the gate's sensor. (*Id*.). Soon after while she was standing next to her vehicle, an officer from the Raleigh Police Department arrived and "began speaking with a sheriff's

deputy who also works for the Board of Elections at public board meetings and events" at which time sheriff's deputy then "incorrectly stated that Ms. Bernstein and Mr. Brakey had 'attempted to get in by tampering with the gate,' which [the sheriff's deputy] said was closed." (Compl. p 19, ¶ 53).

As a result of these events, Plaintiff was told that she was being "trespassed" and the officers completed paperwork to document the "trespassing." (Compl. p 19, ¶ 54). Plaintiff further alleges that "though not entirely clear from the written trespass paperwork, it is Ms. Bernstein's legitimate fear that the 'trespassing' applies to any Wake County Board of Elections property, even if that property is accessed only for purposes of voting and even if that property is only temporarily under the Board's control as a polling place." (Compl. p 20, ¶ 60).

<u>ARGUMENT</u>

I.    *Plaintiff's Claims under 42 U.S.C.§ 1983 denominated as Count I, Count II, Count III and Count IV fail to state claim upon which relief can be granted.*

Plaintiff's claims under 42 U.S.C.§ 1983 denominated as Count I, Count II, Count III and Count IV are all brought against defendants in their official capacities. (See paragraph 14 "Counts I through IV are asserted against all defendants in their official capacities only.") "Official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978).   Furthermore,  a local government may  not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983. *Monell,* 436 U.S. 658, 694,

98 S. Ct. 2018, 2037–38, 56 L. Ed. 2d 611 (1978). Therefore, plaintiffs' claims under 42 U.S.C. § 1983 against defendants in their official capacities must be dismissed because plaintiff has not alleged sufficient facts to show a pervasive practice or custom giving rise to deprivation of any identified civil right.

Although municipalities, unlike public officials, cannot claim immunity from suit, the Supreme Court has expressly cabined their liability: under *Monell,* a municipality is liable only for its *own* illegal acts. *See* 436 U.S. at 691, 98 S.Ct. 2018 (stating that a municipality "cannot be held liable *solely* because it employs a tortfeasor" (emphasis in original)); "([Municipalities] are not vicariously liable under § 1983 for their employees' actions."). Pursuant to this standard, a municipality is liable under § 1983 if it follows a custom, policy, or practice by which local officials violate a plaintiff's constitutional rights. *Monell,* 436 U.S. at 694, 98 S.Ct. 2018. Only if a municipality subscribes to a **custom, policy, or practice** can it be said to have committed an independent act, the *sine qua non* of *Monell* liability.

In this case, plaintiff makes the conclusory allegation in paragraph ten (10) of the complaint that:

> Defendants and their officials are responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, laws, policies, practices, procedures and/or customs that deprived and are depriving Ms. Bernstein of her fundamental rights. These rules, regulations, laws, policies, practices, procedures and/or customs are the moving force behind the actions that deprived and are depriving Ms. Bernstein of her rights as set forth in this complaint.

(Compl. p 4, ¶ 10).

Not surprisingly, plaintiff's complaint has identified no written policy or regulation promulgated by the municipality WCBOE or defendant Gary Sims [hereinafter "Sims"] which has been or could conceivably have been said to be the moving force behind any

alleged civil rights injury. A thorough review of plaintiff's 141 paragraph and 39 page complaint reveals the absence of any allegation of a written rule or policy. Plaintiff does allege that WCBOE and Sims in his official capacity "approved of, directed, and/or ratified the acts, policies, practices, customs and/or procedures of their personnel that deprived and are depriving Ms. Bernstein of her rights" and that WCBOE "has specifically approved of and ratified the actions of Defendant Sims that have deprived and are depriving Ms. Bernstein of her rights." (See Compl. p 4, ¶ 11). Here again, the complaint does not make any allegation of a widespread practice of trespassing individuals from the warehouse. The complaint only alleges a singular instance of a person (Ms. Bernstein) being "trespassed" from the WCBOE warehouse. [1]

When a plaintiff alleges that a municipality is liable under *Monell* for condoning or ratifying widespread misbehavior, under this theory of liability, a municipality violates § 1983 if municipal policymakers fail "to put a stop to or correct a widespread pattern of unconstitutional conduct." *Monell* at 1389. Here no such showing is made and indeed none exists. In *Owens v. Baltimore City State's Att'ys Off.,* 767 F.3d 379, 402–03 (4th Cir. 2014), plaintiff made similar allegations and alleged that by failing to correct its officers' pervasive suppression of evidence, a local police department injured him, committing an independent act that rendered it liable under § 1983. The Fourth Circuit held that "Prevailing under such a theory is no easy task. A plaintiff must point to a "persistent and widespread practice[ ] of municipal officials," the "duration and frequency" of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their "deliberate indifference." *Id.* at 1386–91 (alterations omitted). Both knowledge and

---

[1] The Complaint refers to the WCBOE operations center located at 1200 N. New Hope Road, Raleigh, NC correctly as "the warehouse." (See Compl. pp. 12, 17)

indifference can be inferred from the "extent" of employees' misconduct. *Id.* at 1391. Sporadic or isolated violations of rights will not give rise to *Monell* liability; only "widespread or flagrant" violations will. *Id.* at 1387.

A plaintiff may demonstrate the existence of an official policy in three ways: (1) a written ordinance or regulation; (2) certain affirmative decisions of policymaking officials; or (3) in certain omissions made by policymaking officials that "manifest deliberate indifference to the rights of citizens." *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403-04, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). "An official policy often refers to 'formal rules or understandings ... that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time,' and must be contrasted with 'episodic exercises of discretion in the operational details of government." *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999). The allegations described in plaintiff's complaint are indeed no more than an episodic exercise of discretion.

As to the allegation of a WCBOE custom, plaintiff's claim similarly fails for the same reasons. A municipal custom may arise if a practice is so 'persistent and widespread' and 'so permanent and well settled as to constitute a "custom or usage" with the force of law." *Carter*, 164 F.3d at 218 (quoting *Monell*, 436 U.S. at 691, 98 S.Ct. 2018). A policy or custom "may be attributed to a municipality when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal

governing body that the practices have become customary among its employees." *Spell v. McDaniel*, 824 F.2d 1380 (4th Cir. 1987) at 1387.

In addition, "a policy or custom may possibly be inferred from continued inaction in the face of a known history of widespread constitutional deprivations on the part of city employees, or, under quite narrow circumstances, from the manifest propensity of a general, known course of employee conduct to cause constitutional deprivations to an identifiable group of persons having a special relationship to the state." *Milligan v. City of Newport News*, 743 F.2d 227 (4th Cir.1984). (also see *Rice v. Scholastic Book Fairs, Inc.*, 579 F. Supp. 3d 786 (E.D. Va. 2022) affirming dismissal of Section 1983 case against a school board for allegations of having "a custom of using no-trespass orders to discriminate against males."

In *Owens*, 767 F.3d at 402, the Fourth Circuit reiterated that to establish a *Monell* claim the plaintiff "must point to a 'persistent and widespread practice[ ] of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.' " (Quoting *Spell*, 824 F.2d at 1386-91). Therefore, "Section 1983 plaintiffs seeking to impose liability on a municipality must ... **adequately plead** and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). (*emphasis added*). A policy or custom that gives rise to § 1983 liability will not, however, "be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Milligan*, 743 F.2d at 230. Only when a municipality's conduct demonstrates a "deliberate indifference" to the rights

of its inhabitants can the conduct be properly thought of as a "policy or custom" actionable under § 1983. *Jones v. Wellham*, 104 F.3d 620, 626 (4th Cir. 1997). Here, plaintiff has failed to adequately plead any of these elements and at best the allegations are a singular episode of discretion separately related to responding to plaintiff's misconduct.

Finally, it is curious though not surprising that plaintiff has failed to attach a copy of the "trespass notice" to the complaint or in any of her subsequent filings in the motion for preliminary injunction. (Defendants will do so in the response to the Motion for Preliminary Injunction). Nonetheless, it is noteworthy that despite Plaintiff's hyperbole and unfounded allegations underlying her claims under § 1983, the trespass notice was not issued in response to Plaintiff's speech, her attempt to vote, her attempt to engage in the political process, her attempt to be present on Board of Elections property while other members of the public were allowed to be present, or as retaliation for her expressing protected first amendment conduct. Instead, issuance of the trespass notice was wholly attributed to Plaintiff's unlawful conduct of interfering with the operation of a security gate at the Wake County Board of Elections (which plaintiff admits in paragraph 51). This was deemed a security threat necessitating calls to law enforcement. In an effort to deflect from Plaintiff's wrongdoing that occurred on May 14, 2022, the complaint is substantially devoted to outlining grievances Plaintiff has tallied against Defendants over the past few years in an effort to support her scorn of Defendants.

II. *Plaintiff's Direct Claims under the North Carolina Constitution in Count V are barred because plaintiff has adequate remedies at state law.*

A direct cause of action under the State Constitution is permitted only "in the absence of an adequate state remedy." *Davis v. Town of S. Pines*, 116 N.C. App. 663, 449 S.E.2d 240, 247 (1994) (quoting *Corum v. Univ. of N.C. ex rel. Bd. of Governors*, 330 N.C.

761, 413 S.E.2d 276, 289 (1992)). An adequate state remedy refers to the "possibility of relief," and it is not necessary that a plaintiff prevail on his other state law claims. *Craig ex rel. Craig v. New Hanover Cty. Bd. of Educ.,* 363 N.C. 334, 678 S.E.2d 351, 355 (2009). Here, plaintiff has asserted state tort law claims of assault and defamation. While defendants contend these claims are without merit, plaintiff still has the opportunity to be heard on them through state courts and that is all the law requires for the remedy to be adequate.

An adequate remedy must give the plaintiff "at least the opportunity to enter the courthouse doors and present his claim" and must "provide the possibility of relief under the circumstances." *Craig, 363 N.C..* at 339–40, 678 S.E.2d at 355. Thus, adequacy is found not in success, but in chance. *Wilcox v. City of Asheville,* 222 N.C. App. 285, 299–300, 730 S.E.2d 226, 237 (2012). Here, plaintiff has identified her adequate remedies at state law and, if successful, has the possibility of relief under those claims.

III.   *Plaintiff's claim for defamation fails to adequately allege facts constituting defamation and Count VII against Sims in his individual capacity should be dismissed.*

The sole factual allegation forming the basis for plaintiff's claim against Sims for defamation in Count VII is "on the afternoon of May 14, 2022, in statements to law enforcement, Defendant Sims falsely accused Ms. Bernstein of tampering with a locked gate and made other statements to law enforcement tending to indicate that she was a threat." (Compl. p 37, ¶ 133). Plaintiff goes on to allege that Sims accused plaintiff of "criminal conduct." (Compl. p 37, ¶ 134). First, there is no specific North Carolina criminal law statute on "tampering with a locked gate." To be actionable, a defamatory statement must be false and must be communicated to a person or persons

other than the person defamed." *Nucor Corp. v. Prudential Equity Grp., LLC,* 189 N.C. App. 731, 735–36, 659 S.E.2d 483, 486 (2008) citing *Andrews v. Elliot,* 109 N.C. App. 271, 274, 426 S.E.2d 430, 432 (1993).

Slander *per se* is an oral communication to a third person which amounts to (1) an accusation that the plaintiff committed a crime involving moral turpitude; (2) an allegation that impeaches the plaintiff in his trade, business, or profession; or (3) an imputation that the plaintiff has a loathsome disease. When defamatory words are spoken with the intent that the words be reduced to writing, and the words are in fact written, the publication is both slander and libel. *Taube v. Hooper*, 270 N.C. App. 604, 608, 840 S.E.2d 313, 317 (2020).

Here, the only specific allegation plaintiff makes is that Sims accused her of tampering with a locked gate. (Compl. p 37, ¶ 133). Even if such an allegation were a crime, it certainly is not a crime involving moral turpitude. Moral turpitude involves "an act of inherent baseness in the private, social, or public duties which one owes to his fellowmen or to society, or to his country, her institutions and her government." *Averitt v. Rozier,* 119 N.C.App. 216, 218, 458 S.E.2d 26, 29 (1995) (quoting *State v. Mann,* 317 N.C. 164, 170, 345 S.E.2d 365, 369 (1986)). [2] As to plaintiff's allegation that Sims made other statements to indicate plaintiff was a threat, these conclusory allegations should be disregarded as just that - conclusory allegations without factual support. Interestingly, plaintiff alleges that Sims accused her of a crime but alleges that she "had committed no crime, as evidenced by the lack of any criminal charges from the law enforcement present." (Compl. p 19, ¶ 55).

---

[2] Oxford defines "baseness" as lack of moral principles or bad character.

Finally, plaintiff ADMITS that she and Brakey were both in the path of the closing gate. On page 18, ¶ 51 plaintiff alleges "Although Mr. Brakey exited to the other side of the gate, **he and Ms. Bernstein were still in the vicinity of the gate's safety sensor**. The gate began to close and retract two more times. Ms. Bernstein and Mr. Brakey moved away from the gate and later returned to Ms. Bernstein's vehicle." (Emphasis added). The gate sensor is inside of the gate, and plaintiff admits to being inside of a closing gate on WCBOE property on a Saturday before an election.[3] A reasonable person might infer that tripping a gate's sensor while trying to close is tampering. Furthermore, plaintiff's admitted location would serve no purpose for her purported reason for being on the property in the first place. In her complaint she alleges that she was planning a small, peaceful protest to take place on election day, May 17, 2022 at 7:30 pm to "draw attention to the Board's exclusion of all members of the public." However, inexplicably when she went to the WCBOE property on May 14, 2022 to see where this protest could take place, she by her own admission went inside the gate, a place where no reasonable person would believe a protest on election day could occur. (Compl. p 16, ¶ 46).

IV.     *Plaintiff's claim for Declaratory Judgment fails to adequately allege an actual controversy between the parties and Count VIII against all defendants should be dismissed.*

The Fourth Circuit has identified three elements to determine whether a plaintiff has stated a claim under the Declaratory Judgment Act. First, the complaint must allege "an actual controversy between the parties of sufficient reality to warrant issuance of a declaratory judgment." *Volvo Const. Equip. North America, Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004) (citing 28 U.S.C. § 2201). Second, there must be an

---

[3] The 2022 primary was May 17, 2022.

independent basis for jurisdiction. *Volvo*, 386 F.3d at 592. Third, the court cannot abuse its discretion in exercising jurisdiction. *Id.* To state a case or controversy, a plaintiff must establish a dispute that is "definite and concrete, touching the legal relations of parties with adverse interests." *MedImmune, Inc. v. Genetech,* 549 U.S. 118, 127, 127 S.Ct. 764 (2007).

In other words, the basic question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc*., 549 U.S. at 127. Defendants contend they have no legal relationship to plaintiff with "adverse interests" and even so there is no controversary between plaintiff and defendants. Wake County has its own independent trespass policy, but in this case the Raleigh Police Department actually issued the no trespass "notice." Even assuming plaintiff's allegations that Sims insisted that the trespass be issued, the plaintiff fails to allege or identify the "complainant" on the notice other than to allege an unnamed "sheriff's deputy" who plaintiff claims made false statements to the Raleigh Police officer.

The Fourth Circuit has held that a district court should normally entertain a declaratory judgment action when it finds that the declaratory relief sought: (1) "will serve a useful purpose in clarifying and settling the legal relations in issue," and (2) "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998). It is difficult to fathom how declaratory relief would terminate and afford relief when plaintiff alleges in her complaint that

> Even if Defendants attempt to moot Ms. Bernstein's claims after the filing of this suit, the Court will still have jurisdiction because of the past injuries alleged herein

as well as the fact that the harms at issue qualify as capable of repetition yet evading review. Given the demonstrated animus held by Defendants toward Ms. Bernstein, Defendants could easily decide to again ban her close to an election, depriving her of important constitutional rights when there would be inadequate time to challenge those restrictions.

(Compl. p 8, ¶ 29).

In arguing that defendants cannot moot the issue of whether plaintiff may continue to come upon the property of defendant WCBOE and be disruptive, plaintiff preemptively desires a declaratory ruling that defendant should not be able to trespass her in the future. A declaratory ruling will not inform that decision should it happen that plaintiff come upon nonpublic areas of government property in the future. It is well established that courts will not find a public forum where the government clearly did not intend to create one. "The government does not create a public forum by inaction or by permitting limited discourse, but only by *intentionally* opening up a nontraditional forum for *public discourse*." *City of Sidney,* 364 F.3d at 749 (citing *Cornelius,* 473 U.S. at 802, 105 S.Ct. 3439) (emphasis added). Moreover, the Supreme Court has stated that courts will not "infer that the government intended to create a public forum when the nature of the property is inconsistent with expressive activity." *Cornelius v. NAACP,* 473 U.S. 788, 803 105 S.Ct. 3439 (1985). When the "principal function of the property would be disrupted by expressive activity," such as on jailhouse grounds or military facilities, the Court has held that those spaces "do not constitute public fora." *Id.* at 804, 105 S.Ct. 3439. The same is true for an Election Board's warehouse in a fenced in area.

   V.   *Plaintiff's claim for Assault fails to adequately allege the elements of Civil Assault and Count VI against Sims should be dismissed.*

"The elements of assault are intent, offer of injury, reasonable apprehension, apparent ability, and imminent threat of injury." *Wilkerson v. Duke Univ.,* 229 N.C. App.

670, 675, 748 S.E.2d 154, 159 (2013). Plaintiff only alleges one of these elements –
reasonable apprehension. This "reasonable apprehension" is based upon two (2) encounters
plaintiff alleges occurred on October 5, 2021 and May 14, 2022. (See Compl. p 36, ¶¶ 128,
129). As implausible as these allegations are, even assuming them to be true they fail to
state a claim for civil assault under North Carolina law. To state an actionable claim
for civil assault, plaintiff must plead an "overt act or an attempt, or the unequivocal
appearance of an attempt, with force and violence, to do some *immediate* physical injury
to the person of another." *Dickens v. Puryear*, 302 N.C. 437, 445, 276 S.E.2d 325, 331
(1981) (emphasis in original, citation and quotation marks omitted). "The display of force
or menace of violence must be such to cause the reasonable apprehension
of *immediate* bodily harm." *Id.* (emphasis in original, citation and quotation marks
omitted).

In *Perry v. W. Marine, Inc.*, 255 N.C. App. 857, 805 S.E.2d 544 (2017) the North
Carolina Court of Appeals affirmed dismissal of an assault claim where the allegations
were that the defendant was verbally attacking plaintiff in a threatening manner in a small,
confined space, including backing him into a wall and was unprofessional and demeaning
and constituted an assault. The Court reasoned that "[t]he complaint contains no allegations
that Plaintiff's supervisor's actions were coupled with a threat to harm him, or that her
actions or statements caused Plaintiff a reasonable apprehension of immediate bodily
harm. These allegations are insufficient to state claim for civil assault. The trial court
properly dismissed Plaintiff's claim of civil assault." *Perry v. West Marine,* 255 N.C. App.
857. Here, plaintiff's complaint does NOT allege "reasonable apprehension of immediate

bodily harm" but only alleges that Sims "intimidated" plaintiff and that plaintiff was placed in reasonable apprehension of harmful or offensive bodily contact.

VI.     *Plaintiff's state law tort claims against Defendant Sims are barred by public official immunity.*

Plaintiff's Claims denominated as Count VI (Common Law Assault) and Count VII (Common Law Defamation) are claims in tort which are barred by public official immunity. The Director of Elections is a position created by N.C. Gen. Stat. 163-35. Moreover, the Director may by resolution perform duties of the County Board of Elections authorized by the board. North Carolina law distinguishes public officials from public employees. In distinguishing between a public official and a public employee, our courts have held that (1) a public office is a position created by the constitution or statutes; (2) a public official exercises a portion of the sovereign power; and (3) a public official exercises discretion, while public employees perform ministerial duties. Additionally, an officer is generally required to take an oath of office while an agent or employee is not required to do so. *Chastain v. Arndt*, 253 N.C. App. 8, 16, 800 S.E.2d 68, 75 (2017) citing *Fraley v. Griffin*, 217 N.C.App. 624, 627, 720 S.E.2d 694, 696 (2011).

"It is well settled that absent evidence to the contrary, it will always be presumed that public officials will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law. This presumption places a heavy burden on the party challenging the validity of public officials' actions to overcome this presumption by competent and substantial evidence. Moreover, [e]vidence offered to meet or rebut the presumption of good faith must be sufficient by virtue of its reasonableness, not by mere supposition. It must be factual, not hypothetical; supported by fact, not by surmise."

*McCullers v. Lewis,* 265 N.C. App. 216, 227–28, 828 S.E.2d 524, 535 (2019) citing *Strickland v. Hedrick*, 194 N.C. App. 1, 10-11, 669 S.E.2d 61, 68 (2008).

Public official immunity is "a derivative form" of governmental immunity, *Epps v. Duke Univ.,* 122 N.C.App. 198, 203, 468 S.E.2d 846, 850, *disc. review denied,* 344 N.C. 436, 476 S.E.2d 115 (1996), which precludes suits against public officials in their individual capacities as follows: As long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption, he is protected from liability. Thus, a public official is immune from suit unless the challenged action was (1) outside the scope of official authority, (2) done with malice, or (3) corrupt. *Wilcox v. City of Asheville*, 222 N.C. App. 285, 288, 730 S.E.2d 226, 230 (2012).

Here, in Counts VI and VII plaintiff has alleged neither of these. (Plaintiff makes the completely unfounded allegation in paragraph 128 that Sims "intentionally manipulated an electronic gate with the intent to hit or appear to hit" plaintiff, which defendants contend has no evidentiary support and is not likely to have evidentiary support.) However, plaintiff completely fails to allege corruption, malice or actions outside his authority. Moreover, "a conclusory allegation that a public official acted willfully and wantonly should not be sufficient, by itself, to withstand a Rule 12(b)(6) motion to dismiss. The facts alleged in the complaint must support such a conclusion." *Meyer v. Walls,* 347 N.C. 97, 114, 489 S.E.2d 880, 890 (1997). *See also Dalenko v. Wake County Dept. of Human Services,* 157 N.C.App. 49, 56, 578 S.E.2d 599, 604 (2003) (holding a complaint's allegations amounted to conclusions of law and deductions of fact and were insufficient to

overcome public official immunity). Therefore, as to Count VI and VII, defendant Sims is entitled to public official immunity.

*CONCLUSION*

Plaintiff's complaint, liberally construed, fails to state any claim upon which relief may be granted. The complaint is riddled with exaggerations, incorrect assumptions and implausible hyperbole which, if afforded the presumption of truthfulness, still reveals no actionable claims under state or federal law. Plaintiff was trespassed from the WCBOE warehouse facility for trespassing on a Saturday three (3) days before a primary election and tripping the sensors of a closing gate, a fact she admits in paragraph 51. Nonetheless, plaintiff claims she cannot vote in person or even go to one of the over one hundred precincts in Wake County when in fact she was only trespassed from the warehouse at 1200 N. New Hope Road; she claims Sims trespassed her but alleges a "deputy sheriff" falsely accused her of "attempting to get in by tampering with the gate." Defendants respectfully contend that all non-conclusory factual allegations, even if taken as true, reveal plaintiff has failed to state the claims for relief which she asserts and the complaint should be dismissed with prejudice.

Respectfully submitted this the 22nd day of September, 2022.

/s/ *Scott W. Warren*
Scott W. Warren, NCSB # 14349
County Attorney

/s/ *Roger A. Askew*
Roger A. Askew, NCSB # 18081
Senior Deputy County Attorney

/s/ *Allison P. Cooper*
Allison P. Cooper, NCSB # 34160
Deputy County Attorney
Post Office Box 550
Raleigh, North Carolina 27602
Phone: (919) 856-5500
Fax:    (919) 856-5504
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:22-CV-277-BO-KS

| | |
|---|---|
| LYNN BERNSTEIN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| GARY SIMS, individually and in his official | ) |
| capacity as Director of Elections for the Wake | ) |
| County Board of Elections; and WAKE COUNTY | ) |
| BOARD OF ELECTIONS | ) |
| | ) |
| Defendants. | ) |

The undersigned hereby certifies that the foregoing **DEFENDANTS'**

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** was electronically filed

with the Clerk of Court using the CM/ECF filing system and served via electronic

transmission through the Court's CM/ECF system in accordance with Rule 5(b)(2)(D) of

the Federal Rules of Civil Procedure and applicable local rules upon the CM/ECF

participants:

B. Tyler Brooks
Law Office of B. Tyler Brooks, PLLC
P.O. Box 10767
Greensboro, NC  27404
btb@btylerbrookslawyer.com

Meredith Woods Hubbard
Hubbard Law Firm
150 Fayetteville Street
Suite 300
Raleigh, NC 27601
meredith@hubbardlawnc.com

This the 22nd day of September, 2022.

/s/ Roger A. Askew
Roger A. Askew
Senior Deputy Wake County Attorney
Post Office Box 550
Raleigh, North Carolina 27602
Phone: (919) 856-5500
Fax:    (919) 856-5504