IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:22-cv-00277-BO

| | |
|---|---|
| LYNN BERNSTEIN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GARY SIMS, individually and in ) <br> his official capacity as Director of the ) <br> Wake County Board of Elections; and ) <br> WAKE COUNTY BOARD OF ) <br> ELECTIONS, ) <br> ) <br> Defendants. ) <br> _____ ) | **REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

One thing must be made unmistakably clear: Defendants' response repeatedly states that Ms. Bernstein was interfering or tampering with a gate at the Wake Board of Election headquarters known as the "warehouse" on May 14, 2022. This is not true.

*__Ms. Bernstein emphatically denies that she was interfering or tampering with any gate—and this fact is substantiated by video evidence being submitted to this Court.__*

Moreover, Defendants respond in opposition to the motion for a preliminary injunction in the most curious of ways: first, they admit they now have a policy of indefinitely banning Ms. Bernstein from Board of Elections property and at the same time, Defendants claim they cannot be held

constitutionally liable for this policy because it has not been ratified by them. How Defendants can reconcile these inconsistencies is a mystery to Ms. Bernstein and her counsel. When a political body has banned a member of the public from its property (and accordingly banned her from exercising certain political rights), the constitutional propriety of that decision is subject to judicial review. That is all Mr. Bernstein seeks with this motion.

As to the merits of her claims, Mr. Bernstein can clearly prevail on the claims that her federally protected constitutional rights are being violated by Defendants and that immediate injunctive relief is required. She has been singled out and can no longer address the Board or participate in its affairs in violation of the First Amendment, her right to vote has been unreasonably curtailed, and she has received no due process of law from Defendants whatsoever, in contravention of Defendants' own policies.

For the reasons, Mr. Bernstein respectfully requests that a preliminary injunction issue, particularly in light of the coming 2022 general election and her need to advocate with respect to election integrity.

## ARGUMENT

### I. DEFENDANTS ARE RESPONSIBLE FOR THE BAN ON MS. BERNSTEIN.

Director of Elections Sims, who has been sued in his official capacity, *instructed* a Board agent (Janice Carter) to *instruct* a Raleigh Police Officer to

2

Case 5:22-cv-00277-BO-KS   Document 23   Filed 10/18/22   Page 2 of 14

issue a "trespass" to Mr. Bernstein; the RPD Officer clearly did only as told, ultimately by Defendant Sims. (*See* Ex. A: Reply Decl. of Lynn Bernstein ("Lynn Bernstein Reply Decl.") ¶¶ 19-21.) This "trespassing" order bans her from BOE property, and she can be charged with a crime for accessing this property when other members of the public could lawfully be on the property. This means, for example, she cannot attend BOE meetings, be a poll greeter for a part or candidate during early voting at the BOE warehouse (an early voting location), or cast an early vote or return her own absentee ballot to the Board. If she does these things, she becomes criminally liable under N.C. Gen Stat. § 14-159.13(a).

The Board has been fully informed of this situation and has been personally asked by Mr. Bernstein's husband (and their daughter) to reverse the ban. (*See id.* ¶ 29; Ex. B: Reply Decl. of Nicholas Bernstein ("Nicholas Bernstein Reply Decl.") ¶ 17.) But they have not. The ban on Ms. Bernstein is the official policy of the Defendants, even to this day in this Court.

Defendant Sims is the Wake County Director of Elections. As such he is a final policymaking official for Defendants under N.C. Gen. Stat. § 163-35(d) ("[T]he acts of a properly appointed director of elections shall be deemed to be the acts of the county board of elections, its officers and members."). *See, e.g., Bennett v. Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) ("The policy is that of the city . . . where it is made by an official under authority to do so given by the

3

governing authority."); *see also Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th Cir. 1987) ("A municipal governing body may not avoid attribution of policy to itself simply by officially retaining unexercised ultimate authority to countermand a policy or to discipline or discharge the policymaker.").

Even assuming Defendant Sims is somehow not a final policymaking authority for the ban, certainly the Board itself is, and it has ratified and affirmed the ban on Ms. Bernstein. "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Any attempt by Defendants to say they are not legally answerable for this decision to ban Ms. Bernstein from BOE property is fallacious because the Board is aware of Sims' decision, has rejected the requests of Ms. Bernstein to reverse the ban, and even defend both the ban and the reasons for it in this very Court. *See Hall v. Marion Sch. Dist. No. 2*, 31 F.3d 183, 196 (4th Cir. 1994) (ratification exists where "the Board was aware of its subordinate's action and affirmatively approved both the act and its rationale").

4

## II. MS. BERNSTEIN IS LIKELY TO SUCCEED ON THE MERITS OF HER CLAIMS.

### A. The Video Evidence Is Conclusive: Ms. Bernstein Did Not Tamper Or Interfere With A BOE Gate.

Despite Defendants' efforts to mischaracterize in their filings what happened at the BOE gate, the videos provided by Wake County in response to public records requests, clearly show what Ms. Bernstein—she never tampered or interfered with a gate, especially a closed gate (as Defendants sometimes state). Defendants' response refers to certain other videos, but if videos exist other than those possessed by Ms. Bernstein, they have been strangely (and unlawfully) withheld from her, since she made proper public records requests for all videos from the BOE warehouse for that date. (*See* Lynn Bernstein Reply Decl. ¶¶ 34-35.)

The importance of the fact that Ms. Bernstein did not interfere with a closed gate is admitted in Defendants' own filings. They write in their response to this motion: "It should seem obvious that had plaintiff not interfered with the closing gate, she would not have been trespassed." (Defs.' Resp. at pp 9-10.) Since the evidence shows no such interference, Ms. Bernstein should never have been trespassed by Defendants. Defendants' own admission solves the case. And, she should accordingly be awarded an injunction against further enforcement of the ban—according to Defendants' own representations to the Court.

5

### B. Defendants' Own Evidence In This Court Shows Their Purported Justification for the Ban Is Mere Pretext.

To be sure, Defendants try to paint Ms. Bernstein in a negative light, but they ultimately contradict themselves in a way that shows the true motive for the ban is dislike of Ms. Bernstein's political views. The most notable such contradiction is the contention that Ms. Bernstein interfered with a gate, when other parts of Defendants' own evidence show that she clearly did not. Ms. Bernstein's reply declaration reveals further misstatements and inconsistencies in Defendants' proof submitted to this Court, all of which undermines their purported justifications and reveals that the true motive for their actions is constitutionally invidious animus toward her. (*See* Lynn Bernstein Reply Decl. ¶¶ 7-24.)

Ms. Bernstein's husband, who holds a Ph.D. in Aerospace Engineering and possesses extensive technical knowledge, has used that training and expertise to assemble the relevant security video available and the recordings of the corresponding calls made by Officer Carter (calls made at Defendant Sims' instructions) into a single video presentation. This demonstrative exhibit combining the video and audio plainly reveals that Defendants were already treating Ms. Bernstein as a criminal suspect when she was doing nothing more than walking down a public street. It shows she never tampered with a gate—a gate that only happened to suddenly close when Mr. Brakey

started to look for signs on it. And it shows how Ms. Bernstein and Mr. Brakey were causing no disturbance whatsoever at the warehouse.

The reply declaration from Ms. Bernstein's husband also details his series of conversations with a sitting member of the Board. This Board member describes the longstanding animosity that has existed for Ms. Bernstein. He also describes how Board members have been told Ms. Bernstein did something wrong or illegal to prompt her being trespassed and how he was surprised to learn the truth of what actually transpired on May 14. (*See* Nicholas Bernstein Reply Decl. ¶¶ 17-18.). Despite all this, however, the Board has not acted to remove the ban on Ms. Bernstein.

### C. Ms. Bernstein's Constitutional Rights Are Being Infringed Upon By Defendants And Their Ban.

*1. Plaintiff's First Amendment Rights Are Being Denied.*

Mr. Bernstein is being subjected to a prior restraint on speech. *See, e.g., Wilson v. N.E. Indep. Sch. Dist.*, Case No. 5:14-CV-140-RP, 2015 U.S. Dist. LEXIS 132324, at *15-16 (W.D. Tex. Sept. 30, 2015) ("restriction targeting the speech of an individual rather than the public generally is equivalent to an injunction against speech" and thus is a prior restraint). Nevertheless, Defendants here make no effort to satisfy *their burden* on this motion to show that "the restraint is justified without reference to the content of the speech . . [and that the ban] . . .is narrowly tailored to serve a compelling governmental

interest," *Twitter, Inc. v. Sessions*, 263 F. Supp. 3d 803, 809-10 (N.D. Cal. 2017).

As to the issue of the BOE being a limited forum, Defendants similarly fail to carry their burden for supporting the restriction on speech in this space. First, Defendants contend that their actions were reasonable based on Ms. Bernstein interfering with gate, ***but in fact she did not do this***. Therefore, Defendants' own justification fails. Defendants then claim there are other alternatives for Ms. Bernstein to advocate before the Board, but they never explain what these means are. Defendants have simply failed to support how they can impose an indefinitely ban on Ms. Bernstein speaking before the Board. *Cf. Spindler v. State Bar of Cal.*, Case No. 18-8712-JLS(E), 2019 U.S. Dist. LEXIS 231077, at *24-26 (C.D. Cal. Aug. 16, 2019) ("Defendants cite no authority directly supporting the proposition that a municipality may ban an individual from attending future public meetings based on the individual's prior disruptive conduct.").

Similarly, Defendants take a cursory approach to Ms. Bernstein's Petition Clause claims. Even though they admit Ms. Bernstein cannot come to the BOE warehouse where the Board holds meetings, Defendants contend that it *could* meet elsewhere. When, why, or how the BOE would do this is left totally unexplained. Defendants somehow believe this satisfies their governmental obligations under the Petition Clause.

### *2. Plaintiff's Right To Vote is Being Infringed Upon.*

While the nature of the original trespass order is ambiguous as whether Mr. Bernstein can vote at temporary BOE property,[1] Defendants now claim that she can vote at her home precinct or an early voting location *other than the warehouse*. That still means Ms. Bernstein has substantially few opportunities to vote than other Wake County voters. She cannot early vote at the Board of Elections, and she cannot return her own absentee ballot to the Board of Elections on Election Day. Unsurprisingly, Defendants cite no case law to say that the government can arbitrarily, and without judicial review, restrict a person's right to vote. "[S]tates cannot burden the right to vote in order to address dangers that are remote and only 'theoretically imaginable.'" *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 246 (4th Cir. 2014) (internal citations omitted).

There can also be no stronger proof that any "danger" from Ms. Bernstein is not genuinely feared by Defendants than the fact that they say she can vote at her own precinct or another early vote location. Ms. Bernstein's home precinct, for instance, lacks the security measures of the BOE warehouse. (*See* Lynn Bernstein Reply Decl. ¶¶ 26-27.) If they truly feared she would engage

---

[1] Ms. Bernstein has noted this ambiguity in the trespass order, but also explained how, given Defendants' animosity, she fears the ban can be interpreted by them to cause her maximum trouble and embarrassment. (*See* Lynn Bernstein Reply Decl. ¶ 25.).

in malfeasance, they would prohibit her from such "soft targets," as it were, and not just the well-secured BOE headquarters.

### 3. Plaintiff's Due Process Rights Are Being Violated.

Finally, as to Plaintiff's due process rights, it is clear that Defendants did not follow established Wake County policy that would have permitted her due process and an appeal. (*See* Lynn Bernstein Reply Decl. ¶¶ 30-33.) The failure of Defendants to notify Ms. Bernstein of this process and make it available to her renders all the more cynical Defendants' statement: "What plaintiff does not mention is that she has not made any effort to request defendants to allow her to come on to the property." (Resp. at p 11.) Defendants' contention is not true, of course, because Ms. Bernstein sent her husband to make multiple appeals to the Board directly and had her daughter request in writing that she be able to return. Defendants also fail to acknowledge how any further effort would clearly have been futile because even here in federal court Defendants contend they need their indefinite ban to protect them from the vague and unspecified danger they perceive from Ms. Bernstein.

### III. MS. BERNSTEIN SATISFIES THE OTHER FACTORS FOR ISSUANCE OF A PRELIMINARY INJUNCTION.

Defendants' meager defense of their ban shows they cannot carry the burden that they have on this motion. Thus, on a motion for preliminary

10

injunction, just as at trial, "the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011). "If the moving party meets the first burden, then the government must justify its restriction on speech under whatever level of scrutiny is appropriate (intermediate or strict) given the restriction in question." *Reilly v. City of Harrisburg*, 858 F.3d 173, 180 n.5 (3d Cir. 2017) (citations omitted).

The "loss of First Amendment freedoms for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Defendant can in no way be harmed issuance of the requested injunction, and the public interest will be served by allowing her to resume her non-partisan election integrity work in earnest.

## CONCLUSION

For the foregoing reasons, Ms. Bernstein asks that the motion for preliminary injunction be granted, without requirement of a bond, and continues to respectfully ask that this motion be set for an evidentiary hearing and oral argument at a time and place convenient for the Court.

11

Respectfully submitted, this the 18th day of October, 2022.

LAW OFFICE OF B. TYLER BROOKS, PLLC

BY: /s/B. Tyler Brooks
B. Tyler Brooks
N.C. Bar No. 37604
btb@btylerbrookslawyer.com
P.O. Box 10767
Greensboro, North Carolina 27404
Telephone: (336) 707-8855
Fax: (336) 900-6535

HUBBARD LAW FIRM

BY: /s/Meredith Woods Hubbard
Meredith Woods Hubbard
N.C. Bar No. 38599
meredith@hubbardlawnc.com
150 Fayetteville Street
Suite 300
Raleigh, North Carolina 27601
Telephone: (919) 961-4262
Fax: (919) 930-8544

*Counsel for Plaintiff Lynn Bernstein*

## **CERTIFICATE OF WORD COUNT**

The undersigned counsel certifies that the foregoing brief complies with Local Civil Rule 7.2(f) in that, according to the word count feature of his word processing software, it contains less than 2,800 words, excluding those parts that are allowed to be excluded by the Rule. According to the word count feature, this brief contains 2,700 words.

/s/B. Tyler Brooks
B. Tyler Brooks

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically with the Court's CM/ECF system on October 18, 2022, which will serve a copy on counsel for the defendants, as indicated below.

/s/B. Tyler Brooks
B. Tyler Brooks

**SERVED:**

Scott Wood Warren, Esq.
Allison Pope Cooper, Esq.
Roger A. Askew, Esq.
WAKE COUNTY ATTORNEY'S OFFICE
Post Office Box 550
Raleigh, North Carolina 27602

*Counsel for Defendants*