| | |
|---|---|
| LYNN BERNSTEIN,<br>     Plaintiff,<br><br>v.<br><br>GARY SIMS, individually and in his<br>official capacity as Director of Elections for<br>the Wake County Board of Elections;<br>and WAKE COUNTY BOARD OF<br>ELECTIONS,<br>     Defendants. | O R D E R |

This cause comes before the Court on plaintiff's motion for preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. Defendants have responded, plaintiff has replied, and a hearing was held before the undersigned on November 14, 2022, at Raleigh, North Carolina. In this posture, the motion is ripe for ruling. For the reasons that follow, the motion for preliminary injunction is granted in part.

## BACKGROUND

Plaintiff is a citizen of Wake County, North Carolina and a self-described longtime advocate for transparent elections. She filed this action under 42 U.S.C. § 1983 following the alleged deprivation of her First and Fourteenth Amendment rights by defendants on May 14, 2022. The following facts are derived from plaintiff's amended complaint, the attachments to the preliminary injunction briefing, and the evidence admitted at the preliminary injunction hearing.

Plaintiff alleges that she is a respected and accomplished advocate for election integrity in the State of North Carolina. Plaintiff was previously selected by the Wake County Democratic Party to serve as the lead at-large observer for the 2020 primary election. Plaintiff's allegations

include her history of conflict with the Wake County Board of Elections and defendant Gary Sims specifically. She alleges that Sims has yelled at her and ejected her following a Board of Elections meeting. Plaintiff's allegations contend that much of this friction is caused by her attempting to raise public awareness about the decision of the Wake County Board of Elections not to allow election night observation by the public in order to witness the vote count at the county level. Plaintiff alleges that this violates N.C. Gen. Stat. § 163-182.2(a)(3) and that at least thirty other counties in North Carolina permit election night observation.

This lawsuit arises, however, from specific events which occurred on May 14, 2022, just prior to the May 17, 2022, North Carolina primary election. On 14 May 2022, plaintiff and her colleague went to the Wake County Board of Elections[1] location at 1200 N. New Hope Road in Raleigh, North Carolina. This location is alternatively described as the WCBOE operations center or warehouse. Saturday, May 14, 2022, was the last day of early voting for the primary, and the WCBOE warehouse served as an early voting site. Early voting ended at 3:00 p.m. that day and at approximately 4:48 p.m., WCBOE Deputy Director Olivia McCall contacted security to request that they close the Main Staff Gate; early voters and early voting workers had left and the gate was closed to "secure the WCBOE to transition to the election supply and distribution phase." [DE 20-4] McCall Aff. ¶ 5.

Prior to McCall's request to close the gate, Janice Carter, a special police officer with Allied Universal Security Services assigned to the WCBOE warehouse, had notified the Raleigh Police Department of what she believed was suspicious activity involving plaintiff and her colleague. [DE 20-3] Carter Aff. ¶¶ 2, 7. Officer Carter had observed plaintiff and her colleague in a blue SUV park across the street from the warehouse, then drive past the warehouse and park

---

[1] Referred to herein as WCBOE.

in a parking lot next door to the warehouse. Officer Carter identified the driver as plaintiff. *Id.* ¶¶ 7-9. Plaintiff and her colleague then exited the SUV and walked along the fence between the WCBOE warehouse and its neighboring property. Officer Carter states she believed plaintiff to be taking video of the warehouse property and that she contacted defendant Sims and McCall because she "was aware of prior incidents at the WCBOE involving Ms. Bernstein". *Id.* ¶ 11. Office Carter contacted the Raleigh Police Department's non-emergency line to report a suspicious vehicle at approximately 4:40 p.m. *Id.* ¶ 12.

According to a transcript of the first call to the Raleigh Police Department's non-emergency line, Officer Carter contacted the police "on the order of . . . from the director from the Board of Elections." [DE 33-6 p. 2 of 13]. Office Carter went on to state that plaintiff and her colleague were "watching the whole process" "and recording it" and that "the director asked [Carter] to call and state that it's a suspicious activity." *Id.* p. 5 of 13.

As is depicted in the surveillance video evidence and Officer Carter's affidavit, plaintiff and her colleague were then seen leaving adjacent parking lot, walking along New Hope Road, and then walking up the WCBOE driveway and approaching the north lot gate.[2] Carter Aff. ¶ 13. Defendant Sims had apparently received a call from McCall notifying him that a person or persons were seen on camera by the Wake County Security Officer using their foot to activate the sensor in the gate, which prevented the gate from closing. *Id.* Officer Carter then called the Raleigh Police Department's non-emergency line for a second time. Officer Carter states that she called the police due to the suspicious activity, prior encounters with plaintiff being confrontational and not wanting to leave WCBOE property after hours, and heightened security due to an active election. *Id.* ¶ 14.

---

[2] This appears to be the same gate described by McCall as the Main Staff Gate.

3

Plaintiff and her colleague were then seen walking back in the direction of plaintiff's vehicle. *Id.* ¶ 15.

A transcript of Officer Carter's second call to the non-emergency line shows Officer Carter informing the dispatcher that "the director would like to trespass both of them formally . . . off this property." [DE 33-7].

Raleigh Police Officer Hook arrived a short time later and spoke to Officer Carter and to plaintiff and her colleague. Officer Hook's body camera recorded these conversations. Ultimately, plaintiff and her colleague were informed that they were being formally trespassed. It was explained to plaintiff that due to this trespass notice she would be committing the crime of trespass should she return to the WCBOE property.[3] Officer Hook completed the Raleigh Police Department trespass form and plaintiff, and her colleague, who is not a party to this action, were "trespassed" from the WCBOE warehouse at 1200 N. New Hope Road on 14 May 2022.

Plaintiff's husband attended three different WCBOE meetings in the days following the trespass notice to attempt to convince the Board of Elections to allow his wife to access WCBOE property. [DE 23-2] Bernstein, N. Decl. ¶ 17. These attempts were unsuccessful, and plaintiff instituted this action on July 19, 2022.

In her amended complaint, plaintiff alleges claims for violation of the First Amendment: prior restraint, content and viewpoint discrimination, and denial of rights under the Petition Clause (Count I); violation of the Equal Protection Clause of the Fourteenth Amendment: denial of right to vote and engage in the political process on equal terms (Count II); violation of Due Process Clause of the Fourteenth Amendment: lack of procedural due process (Count III); retaliation for exercising rights guaranteed by the First Amendment (Count IV); violations of North Carolina

---

[3] *See* N.C. Gen. Stat. § 14-159.13(a)(1).

4

Constitution (Count V); common law assault against Sims in his individual capacity (Count VI); common law defamation against Sims in his individual capacity (Count VII); and declaratory judgment relief (Count VIII). Plaintiff seeks a preliminary injunction based only upon her first three claims for relief for violation of her First and Fourteenth Amendment rights.

## DISCUSSION

"A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (quotation and citation omitted). A movant must make a clear showing of the following four elements before a preliminary injunction may issue: (1) that she is likely to succeed on the merits, (2) that she is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in her favor, and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Roe v. Dep't of Def.*, 947 F.3d 207, 219 (4th Cir. 2020). "Each of these four requirements must be satisfied." *Mountain Valley Pipeline, LLC v. W. Pocahontas Properties Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019).

Typically, a preliminary injunction is entered in order to preserve the status quo; where, as here, a party seeks a mandatory injunction, one which mandates a particular action, the party must demonstrate that "the exigencies of the situation demand such relief." *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980).

A.  Likelihood of success

A plaintiff seeking a preliminary injunction must demonstrate a likelihood, not a certainty, of success on the merits. *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014). Plaintiff has done so with regard to her claim that her trespass from the WCBOE warehouse amounts to an unlawful limit on her First Amendment rights of freedom of speech and to petition the government for the redress of grievances. Accordingly, because the

5

Court determines that plaintiff's likelihood of success has been demonstrated as to Count I, it limits its analysis to this claim and declines to consider plaintiff's remaining claims at this stage. This is due in part to the requirement that in order to obtain a mandatory injunction plaintiff must demonstrate exigencies which demand the relief she seeks. The Court notes, however, that the limitation of the trespass notice to the WCBOE warehouse at 1200 N. New Hope Road is plain on the face of the notice. Accordingly, any concerns or claims by plaintiff which relate to her being prevented from accessing other WCBOE property to vote or engage in other activities likely fail.

The First Amendment to the United States Constitution protects both freedom of speech and the right to petition the government for a redress of grievances. U.S. Const., amend. I.

> The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives, whereas the right to speak fosters the public exchange of ideas that is integral to deliberative democracy as well as to the whole realm of ideas and human affairs. Beyond the political sphere, both speech and petition advance personal expression, although the right to petition is generally concerned with expression directed to the government seeking redress of a grievance.

*Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388 (2011). First Amendment speech and petition rights have been described by the Supreme Court as "cognate rights." *Id.*

Governmental entities, such as the WCBOE, are "'strictly limited' in their ability to regulate private speech in public fora." *Davison v. Randall*, 912 F.3d 666, 681 (4th Cir. 2019) (quoting *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469 (2009)). In this case, the parties appear to agree that the WCBOE warehouse operates as a limited public forum, as it is not a traditionally public forum but at times is open to the public to engage in expressive activity. *Id.*; *see also Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 215 (2015) (limited forum exists where government has reserved a forum for "discussion of certain topics").

6

Specifically, the WCBOE warehouse is open to the public for the discussion of certain topics when the WCBOE holds its public meetings in that space. The Court agrees that the WCBOE is a limited public forum.

In order to restrict speech in a limited public forum, the restriction must be both reasonable and viewpoint neutral. *Davison v. Rose*, 19 F.4th 626, 635 (4th Cir. 2021); *see also Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez*, 561 U.S. 661, 679 (2010). Plaintiff's ban from the WCBOE warehouse likely amounts to an unreasonable restriction based upon viewpoint because, first, it is targeted to a particular speaker and not to content generally and, second, because plaintiff's ban not only prohibits her from speaking at WCBOE public meetings at the warehouse but from attending them at all. *See Wilson v. N. E. Indep. Sch. Dist.*, No. 5:14-CV-140-RP, 2015 U.S. Dist. LEXIS 132324, at *15-16 (W.D. Tex. Sep. 30, 2015) ("A restriction targeting the speech of an individual rather than the public generally is equivalent to an injunction against speech, and as the Supreme Court has explained, "[i]njunctions . . . carry greater risks of censorship and discriminatory application than do general ordinances.'") (quoting *Madsen v. Women's Health Ctr.*, 512 U.S. 753, 764 (1994)); *and Kass v. City of New York*, 864 F.3d 200, 207 (2d Cir. 2017) (freedom of speech "extends not only to the right to speak, but also to the right to listen and receive information.").

Moreover, plaintiff has presented sufficient evidence that her being trespassed was motivated not by any criminal activity but by her prior expression of her viewpoint and message. Contrary to defendants' arguments, this record does not reflect that plaintiff has had serious security issues in the past. The affidavit of McCall indicates that plaintiff has previously attempted to gain access to the WCBOE during non-public hours and that plaintiff had to be asked to leave a 5 October 2021 Board meeting following adjournment, and that she aggressively approached

7

Board members demanding responses to be recorded on video both inside the WCBOE and in the parking lot. [DE 20-4 ¶¶ 11,12]. McCall's affidavit references her 12 October 2021 email to Dwayne Eury, which identifies the following as issues from the 5 October 2021 meeting: plaintiff Lynn Bernstein left a bag/purse unsupervised and it was believed to be plaintiff's vehicle which was parked across the street, facing the WCBOE building, which turned on its headlights as staff and a Board member left the building. [DE 20-4 p. 8 of 14]. There is no reference to plaintiff, or any member of the public, acting aggressively or attempting to approach Board members inside the WCBOE building at the 5 October 2021 Board meeting in McCall's email.

Nor does the Court find there any criminal or nefarious activity to have taken place on 14 May 2022 based upon the record before the Court. The video evidence in the record shows plaintiff (1) driving along a public roadway, (2) parking in parking lots that are not WCBOE property, and (3) walking toward an open but then closing gate to a WCBOE parking lot. The surveillance video reflects, as best the Court can tell, plaintiff's colleague raising his foot as the gate was closing, causing the gate to begin to open again. At that time, neither plaintiff nor her colleague were inside the gate, nor do they appear to be attempting to get inside the gate. While plaintiff's colleague raised his foot, plaintiff herself appears to be further back from the gate and closer to the street. Indeed, after a few moments, plaintiff and her colleague walk away from the gate and back to plaintiff's car. The Court simply does not discern any illegal activity or attempted malfeasance by plaintiff from the video evidence submitted. Accordingly, plaintiff has plausibly alleged that the trespass notice was issued to her because of what she says and not what she had done.

"While the First Amendment does not guarantee the right to employ every conceivable method of communication at all times and in all places, a restriction on expressive activity may be invalid if the remaining modes of communication are inadequate." *Members of City Council of*

*City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 812 (1984) (internal citation omitted). While defendants have indicated plaintiff's trespass from the warehouse does not amount to a restraint on speech because the WCBOE can hold its public meetings in places aside from the warehouse, there is no record evidence demonstrating that it has done or intends to do so. The WCBOE further does not permit virtual or remote appearances. While plaintiff, like all members of the public, is permitted to submit email comments prior to a meeting, the Court determines that this is not an adequate alternative. First, plaintiff testified that the link to submit a comment to the Board has not always worked. Second, even if plaintiff could consistently submit written comments, participation in a Board of Elections public meeting includes the opportunity to communicate with other community members, something which plaintiff cannot do if she can only submit written comments, and plaintiff's physical presence would typically have a different effect than would a written submission. *Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536, 549 (D. Vt. 2014).

Plaintiff is also likely to succeed on her claim that the trespass ban unconstitutionally limits her ability to petition the government for redress of a grievance. The right to petition the government is "cut from the same cloth as the other guarantees of [the First] Amendment, and is an assurance of a particular freedom of expression." *McDonald v. Smith*, 472 U.S. 479, 482 (1985). The right to petition the government may be limited, so long as it is for a legitimate purpose. *United States v. Rosen*, 445 F. Supp. 2d 602, 642 (E.D. Va. 2006). For the foregoing reasons,[4] defendants have failed to sufficiently demonstrate that plaintiff's ban from the WCBOE warehouse property,

---

[4] The Supreme Court has identified instances where the analysis of a Petition Clause claim should be distinct from the analysis of a Speech Clause claim, including the antitrust context. *Guarnieri*, 564 U.S. at 389. However, the Court discerns no reason to conduct a wholly separate analysis in this case. *See Sammons v. McCarthy*, No. ELH-20-3010, 2022 U.S. Dist. LEXIS 56860, at *113 (D. Md. Mar. 29, 2022).

Case 5:22-cv-00277-BO-KS    Document 40    Filed 12/01/22    Page 9 of 14

and thus WCBOE public meetings, was for a legitimate purpose. Though defendants have cited to safety concerns, the record at this stage simply does not bear those concerns out.

Much of defendants' response to the motion for preliminary injunction is devoted to its argument that the actions of defendant Sims are not attributable to the WCBOE, and that plaintiff has thus not established a basis for municipal liability.

Under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690-94 (1978), a local government can be held liable under 42 U.S.C. § 1983 for its unconstitutional policies. Municipal liability only results "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694. Municipal liability is not available under the theory of respondeat superior. *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984).

> A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest [s] deliberate indifference to the rights of citizens'; or (4) through a practice that is so 'persistent and widespread' as to constitute a "custom or usage with the force of law.

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

*Monell* liability is thus concerned with "acts which the municipality has officially sanctioned or ordered" and "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Here, plaintiff alleges that Sims, a person with final policy making authority for the WCBOE, made the decision to trespass plaintiff from the WCBOE warehouse property, inflicting her First Amendment injuries. The Court agrees that plaintiff, certainly at this stage, has sufficiently alleged that Sims's actions are more than an "isolated constitutional deprivation" by a municipal employee. *Milligan*, 743 F.2d at 230. Sims, who has been sued in his official capacity

10

as to plaintiff's constitutional claims, is the Director of Elections for Wake County. Pursuant to N.C. Gen. Stat. § 163-35(d), within any limitations imposed upon a director by resolution of the county board of elections, "the acts of a properly appointed director of elections shall be deemed to be the acts of the county board of elections, its officers and members." *See also Riddick v. Sch. Bd.*, 238 F.3d 518, 523 (4th Cir. 2000) (whether a defendant possesses final policymaking authority a question of state law).

Plaintiff has further alleged that even if Sims is not found to have final policymaking authority, his actions have been ratified by the full WCBOE by their failing to address plaintiff's requests, made through her husband, to repeal the trespass notice. Where authorized policymakers have approved of a subordinate's decision and the reason for the decision, their ratification of the decision can be grounds for municipal liability. *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Thus, if the WCBOE has the authority to review the decision of Sims, its approval of his decision can support § 1983 liability. *See also Starbuck v. Williamsburg James City Cty. Sch. Bd.*, 28 F.4th 529, 534 (4th Cir. 2022) (discussing distinction between ratification liability and respondeat superior).

Accordingly, the Court finds that plaintiff is likely to succeed on Count I of her amended complaint and that she has sufficiently alleged *Monell* liability.

B.    Irreparable harm

The deprivation of First Amendment rights constitutes irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 2690 (1976); *Johnson v. Bergland*, 586 F.2d 993, 995 (4th Cir. 1978) ("Violations of first amendment rights constitute per se irreparable injury."). As discussed above, and contrary to defendants' assertion, plaintiff has no reasonable alternative to exercising

11

her First Amendment speech and petition rights in the form of personal attendance at public WCBOE meetings at the warehouse. Plaintiff has satisfied this element on these limited grounds.

C.  Balance of equities and the public interest

The Court considers the public interest and the balance of the equities together. *See Nken v. Holder*, 556 U.S. 418, 435 (2009); *Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554, 602 (4th Cir. 2017). The public interest always lies with the vindication of constitutional rights. *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002). Moreover, the Court discerns no harm to defendants in permitting plaintiff to attend public WCBOE meetings pursuant to a limited injunction. The record does not support that plaintiff poses a true security threat to the Board, any of its members, or its staff. *See, e.g., Rinne v. Camden Cty.*, No. 2:21-cv-04076-MDH, 2021 U.S. Dist. LEXIS 241580, at *19 (W.D. Mo. Nov. 19, 2021) (granting preliminary injunction to plaintiff trespassed by county commissioners from all county property after evidence did not support defendants' assertions that plaintiff had engaged in threatening or harassing behavior). The 2022 election has passed, and while the WCBOE continues its work, it has not sufficiently identified any hardship it would endure by permitting plaintiff to attend public meetings.

In sum, the Court finds that plaintiff has sufficiently demonstrated each of the *Winter* factors and that a limited preliminary injunction is appropriate. In awarding this injunction, the Court has carefully considered the arguments of the parties and expressly limits its holding to plaintiff's First Amendment claim arising from her inability to attend public WCBOE meetings in order to exercise her speech and petition rights. The Court recognizes that the WCBOE must take security seriously, and further recognizes that the WCBOE may impose limitations on the behavior of members of the public in order to ensure the safety and security of its facilities, its Board members, and staff. Though cognizant that a court is not "mechanically obligated to grant an

12

injunction for every violation of law[,]" *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982), the Court nonetheless determines that a preliminary injunction is warranted in this case as "[t]he First Amendment 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.'" *Connick v. Myers*, 461 U.S. 138, 145 (1983) (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957)).

Defendants are therefore preliminarily enjoined from enforcing the trespass notice issued against plaintiff for the 1200 N. New Hope Road property when there is a public WCBOE meeting. Plaintiff is permitted to be present at public meetings held at the WCBOE warehouse but she is not entitled to any special privilege or access to the Board or its functions. When plaintiff is permitted to be present at the WCBOE warehouse facility, she must adhere to all applicable rules and regulations, and this preliminary injunction shall not be construed as dispensation for plaintiff to interfere with the legitimate activities of the WCBOE.

D. Security

Rule 65(c) of the Federal Rules of Civil Procedure requires the Court to consider whether plaintiffs should provide security in an amount sufficient to pay the costs and damages sustained by any party found to have been wrongfully enjoined. Where circumstances warrant it, a nominal bond may suffice. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999). In light of the important federal rights at issue in this case, and absent any request from defendants for plaintiff to provide security, the Court determines a zero dollar bond is appropriate in this instance.

### CONCLUSION

Accordingly, plaintiff's motion for preliminary injunction [DE 13] is GRANTED IN PART. Defendants are hereby preliminary enjoined, during the pendency of this action, from

13

enforcing the trespass notice issued against plaintiff for the 1200 N. New Hope Road, Wake County Board of Elections property during any meeting of the Wake County Board of Elections that is open to the public. The Rule 65(c) bond is fixed at zero dollars.

Defendants' motion to manually file exhibits [DE 32] is GRANTED.

SO ORDERED, this 30 day of November 2022.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE